**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | Civil Action No. RWT-08-1797 |
| v. | * | |
| | * | |
| | * | |
| **REGINALD ANTHONY LONGSHORE** | * | Criminal Action No. RWT-06-051 |
| | * | |
| | * | |
| | * | |

**MEMORANDUM OPINION**

Petitioner Reginald Anthony Longshore ("Longshore") has moved to correct his sentence pursuant to 28 U.S.C § 2255. The Court originally sentenced Longshore as a career offender under U.S. Sentencing Guidelines § 4B1.1, because he had two prior felony convictions for drug offenses and one prior felony conviction for a violent crime. Since his federal sentencing, Maryland state courts have vacated two of Longshore's predicate felony convictions. Longshore contends that he no longer qualifies as a career offender and seeks a new sentencing hearing to correct his previous sentence. Because Longshore timely filed his motion to correct sentence and exercised due diligence in pursuing vacatur of his previous convictions, this Court will grant the motion.

**I. BACKGROUND**

On February 6, 2006, a federal grand jury indicted Longshore on one charge of possession with intent to distribute more than fifty grams of crack cocaine and one charge of distribution of crack cocaine. On July 27, 2006, Longshore pled guilty to the first charge pursuant to a plea agreement with the United States Attorney's Office for the District of Maryland. In the same plea agreement, Longshore conceded that he was a career offender, because he had at least two prior convictions for either a violent crime or a controlled substance

offense. *See* U.S. Sentencing Guidelines Manual § 4B1.1 (2002). On November 30, 2006 the Court sentenced Longshore to 188 months in prison and five years of supervised release after finding that Longshore was a career offender.  (Amended Judgment in a Criminal Case at 2–3, *United States v. Longshore*, No. 06-051 (D. Md. Jan. 10, 2007)).

The Court classified Longshore as a career offender based on three prior Maryland state court convictions listed in his Pre-Sentence Report: (1) a conviction on March 11, 1996 for conspiracy to possess with intent to distribute cocaine (Prince George's County Circuit Court Case No. CT95-1523B) ("1996 conspiracy conviction"), (2) a conviction on March 11, 1996 for robbery with a deadly weapon (Prince George's County Circuit Court Case No. CT95-1726X) ("1996 robbery conviction"), and (3) a conviction on June 17, 2003 for possession with intent to distribute cocaine (Charles County Circuit Court Case No. K02-557) ("2003 PWID conviction").

On June 8, 2007 the Court of Appeals of Maryland vacated Longshore's 2003 PWID conviction. *Longshore v. State*, 924 A.2d 1129, 1159 (Md. 2007).  On December 5, 2007, Longshore filed a *coram nobis* petition to have both of his 1996 convictions set aside.  On June 6, 2008, the Prince George's County Circuit Court granted Longshore's petition with regard to his 1996 conspiracy conviction but refused to set aside his 1996 robbery conviction.  Finally, on July 8, 2008, Longshore filed the motion before the Court to correct his sentence.

## II. ANALYSIS

Prisoners in federal custody may, under certain circumstances, move the court which imposed their sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a) (2006).  In particular, prisoners that originally received enhanced sentences as career offenders due to previous state court felony convictions may challenge the enhanced sentence if a state court subsequently vacates the predicate convictions. *United States v. Gadsen*, 332 F.3d 224, 228 (4th Cir. 2003) (citing *Daniels v. United States*, 532 U.S. 374, 382 (1994)).  Unless the record of the case clearly shows that the prisoner is not entitled to relief, the court should grant a prompt rehearing to re-sentence the

prisoner. 28 U.S.C. § 2255(b). The prisoner must, however, file the motion to correct sentence within one year of the latest of the following:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed . . . ;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court;
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Longshore's federal conviction became final on November 30, 2006, when the Court sentenced him as a career offender to 188 months imprisonment. For purposes of the statute of limitations rule in 28 U.S.C. § 2255(f)(4), a state court vacatur counts as a matter of fact. *Johnson v. United States*, 544 U.S. 295, 302 (2005). Since petitioner does not contend that any of the first three circumstances apply, the Court need only consider whether the motion is timely under section 2255(f)(4).

The statute of limitations does not begin to run until a petitioner has a complete and present cause of action. *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 195 (1997) (citing *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)). Hence, several district courts have held that a claim attacking a career offender classification is not ripe until a sufficient number of state convictions have been vacated to negate the petitioner's career offender status. *McCloud v. United States*, 2008 WL 3853428, at *8 (S.D. Ga. Aug. 18, 2008); *United States v. Catlett*, 2008 WL 1699230, at *1 (E.D. Ark. April 9, 2008); *United States v. Venson*, 295 F. Supp. 2d 630, 633–34 (E.D. Va. 2003). In *Johnson*, the Supreme Court rejected the view that the statute of limitations on a § 2255 claim could expire or begin to run before the "claim and its necessary predicate even exist[ed]." *Johnson*, 544 U.S. at 305. Because vacatur of a sufficient number of state convictions is a necessary predicate for relief, *McCloud*, 2008 WL 3853428, at *8, the statute of

limitations does not begin to run until state courts have vacated enough of the plaintiff's prior convictions to negate his career offender status.

Longshore did not have a complete and present cause of action until June 6, 2008, when the Prince George's County Circuit Court vacated his 1996 conspiracy conviction. That vacatur reduced his number of qualifying convictions to one, negating his career offender status. *See* U.S. Sentencing Guidelines Manual § 4B1.1 (2002). Longshore filed his § 2255 motion scarcely a month later, well within the statute of limitations.

In order to preserve the tolling exception under 28 U.S.C. § 2255(f)(4), however, a petitioner must exercise due diligence in seeking an order vacating his prior state court convictions. *Johnson*, 544 U.S. at 302. Accordingly, the petitioner must begin to challenge prior state convictions following his federal sentencing. *See id.* at 309; *Powell v. United States*, 452 F. Supp. 2d 634, 639 (D. Md. 2006), *vacated on other grounds*, 266 F. App'x 263 (4th Cir. 2008). Although the Fourth Circuit has not yet ruled on the issue, other circuits have held that, "[Section] 2255(f)(4) does not require maximum feasible diligence, but only 'due' or reasonable diligence. Due diligence therefore does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts." *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002) (citing *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000)); *see also Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008).

The Supreme Court has suggested that petitioners who fail, without excuse, to challenge prior state court convictions within twenty-one months of their federal sentence have not exercised due diligence. *See Johnson*, 544 U.S. at 311 ("[petitioner] would still have delayed unreasonably, having waited over 21 months"). Other federal courts have followed the Supreme Court and identified unjustified delays of at least twenty-one months as unreasonable. *See Rodriguez v. United States*, 186 F. App'x 857, 859 (11th Cir. 2006) ("The [C]ourt expressed doubt as to whether even a twenty-one month delay would be considered diligent . . . "); *In re Milton*, 155 F. App'x 614, 617 (3d Cir. 2005) ("Nothing further occurred in this case until counsel was appointed on October 3,

1994—22 months after [petitioner's] federal sentence was imposed."); *Hamilton v. United States*, 2008 WL 4533692 at *2 (S.D. Ga. Oct. 6, 2008) ("The Court finds that [petitioner's] 21-month delay in filing his state habeas petition was unreasonable."). In contrast, at least one circuit court has held that a petitioner who delayed five months in uncovering facts to support his § 2255 motion had exercised due diligence. *See Wims*, 225 F.3d at 191.

In evaluating the due diligence exercised by the petitioner, the Court should consider the individual circumstances of the petitioner, including the practical realities of the petitioner's confinement. *See Jones v. United States*, 20 F. App'x 520, 523 (7th Cir. 2001); *see also Aron*, 291 F.3d at 712; *Wims*, 225 F.3d at 190. District courts have been reluctant to excuse a petitioner's delay when the petitioner could have easily ascertained the facts supporting his motion to correct sentence. *See Montenegro v. United States*, 248 F.3d 585, 592–93 (7th Cir. 2001) (failing to excuse petitioner's delay when the facts supporting his claim were a matter of public record), *overruled on other grounds by*, *Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001); *Wong v. United States,* 537 F. Supp. 2d 436, 442 (E.D.N.Y. 2007) (failing to excuse petitioner's delay in seeking exculpatory information when petitioner knew that co-defendants may have provided DEA with such information); *United States v. Pollard*, 290 F. Supp. 2d 153, 161 (D.D.C. 2003) (failing to excuse petitioner's delay when petitioner was aware of attorney's performance at sentencing that allegedly supported his § 2255 claim).

Thirteen months passed from the time Longshore received his federal sentence (November 8, 2006) to the time he filed a *coram nobis* petition challenging his 1996 conspiracy conviction and his 1996 robbery conviction (December 5, 2007). While no court appears to have held that a petitioner who waited thirteen months to challenge a predicate state court conviction exercised due diligence, neither has any court held that a petitioner who waited thirteen months *failed* to exercise due diligence. Furthermore, Longshore and his counsel were hardly idle during that time.

During the first six months of this period, Longshore was appealing his 2003 PWID conviction, another predicate offense upon which his career offender status was based. (*See* Pet'r's

Mot. Ex. B at 19–20.) Prior to January 9, 2007, and therefore within two months of receiving his federal sentence, Longshore had already sought assistance from the Office of the Federal Public Defender to file a *coram nobis* petition to vacate his other predicate felony convictions. (*See* Pet'r's Reply Ex. 1 ¶¶ 2–4.) The public defender that handled Longshore's federal case informed him that he would consider filing a *coram nobis* petition in state court if Longshore's appeal was successful. (Pet'r's Reply Ex. 1 ¶ 4.) When a new public defender, Sherri Keene, was assigned to Longshore's case on January 9, 2007, she adopted this strategic position because it appeared unlikely that both of his 1996 convictions would be vacated. (Pet'r's Reply Ex. 1 ¶¶ 4, 5.)

Keene filed a *coram nobis* petition challenging Longshore's 1996 conspiracy conviction and his 1996 robbery conviction on December 5, 2007, approximately six months after Longshore won his appeal of the 2003 PWID conviction. (*See* Resp. Ex. B.) In the intervening months, Keene corresponded with Longshore, informing him that she was working on his petition. (Pet'r's Reply Ex. 1 ¶ 8.) She stated that it took her six months to prepare the petition because she had to familiarize herself with Longshore's case and because the Maryland State Court of Appeals had handed down a new decision that resulted in a significant change in the law governing *coram nobis* petitions. (Pet'r's Reply Ex. 1 ¶¶ 11, 12.) She also stated that communication with Longshore was slow and difficult due to his incarceration. (Pet'r's Reply Ex. 1 ¶ 11.)

Longshore's actions demonstrate that he acted with due diligence in seeking the vacatur of his predicate state court convictions. At the time of his federal sentencing, he was already appealing his 2003 PWID conviction, and he sought to vacate the other two convictions within two months of his sentencing. Although the public defender's office elected to wait for the results of his appeal before pursuing vacatur of his other convictions, Longshore repeatedly expressed his desire to pursue *coram nobis* to Keene. (Pet'r's Reply Ex. 1 ¶ 15.) Accordingly, Longshore took significant steps toward challenging his prior convictions within two months of his federal sentencing and continued to pursue the matter thereafter.

To require Longshore to pursue vacatur of all three convictions simultaneously would be to require him to exercise considerably more than due diligence. Furthermore, such a requirement would likely cause petitioners to pursue vacaturs that may have no impact on their federal sentences. Allowing petitioners to prioritize their efforts by attacking the most vulnerable conviction first will reduce the burden on state courts, because petitioners whose most promising cases fail will be unlikely to file subsequent petitions that are likely to be fruitless.

Finally, the reasonable strategic decisions of defense counsel are usually unchallengeable. *Cf. Meyer v. Branker*, 506 F.3d 358, 371 (4th Cir. 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)) (noting that in the context of ineffective assistance of counsel claims counsel's strategic decisions are evaluated under a highly deferential standard). In this case, Longshore's counsel made the decision not to expend the limited resources of the Office of the Federal Public Defender unless Longshore had stood a reasonable chance of vacating a sufficient number of convictions. The Court finds this strategy reasonable and prudent under the circumstances.

Although Longshore took six months to file his *coram nobis* petition following his successful appeal, this delay is not attributable to him and is reasonable under the circumstances. The delay itself is only a month longer than the excused five month delay of the petitioner in *Wims*. *See Wims*, 225 F.3d at 191. Significantly, Longshore's case was handled by a different public defender following sentencing who needed time to become familiar with his case, and his incarceration made communication with his new counsel difficult. (Pet'r's Reply Ex. 1 ¶ 11.) Under these circumstances, the six month delay between Longshore's appeal and the filing of his *coram nobis* petition was not due to a failure to exercise due diligence. Accordingly, Longshore timely filed his motion to correct sentence, because he filed it within one year of the vacatur of his 1996 conspiracy conviction and exercised due diligence in challenging his prior convictions. He is therefore entitled to a hearing to correct his sentence in light of his vacated state court convictions.

## III.  CONCLUSION

For the foregoing reasons, the Court will, by separate order, grant Petitioner's Motion to Correct Sentence and schedule a hearing so that Petitioner can be re-sentenced without application of the career offender sentencing enhancement.

Date: July 28, 2009                                  /s/
                                     ROGER W. TITUS
                                     UNITED STATES DISTRICT JUDGE